[664 NYS2d 59]

In the Matter of DANIEL JUDD SHAPIRO, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, November 3, 1997

APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains *(Maryann Yanarella* of counsel), for petitioner.

*Alan M. Simon,* Suffern, for respondent.

### OPINION OF THE COURT

Per Curiam.

The petition contains 10 charges of professional misconduct against the respondent. The Special Referee sustained all of the charges. The Grievance Committee now moves to confirm the report of the Special Referee. The respondent cross-moves to disaffirm the report and to dismiss the charges.

Charge One alleged that the respondent disregarded the rulings of a tribunal made in the course of a proceeding in violation of Code of Professional Responsibility DR 7-106 (A) (22 NYCRR 1200.37 [a]):

1. On or about August 11, 1986, in the matter of *Daniel J. Shapiro v Margarita Rosa,* a divorce action in the Supreme Court, New York County, the respondent was ordered to pay $100 per week in pendente lite child support.

2. On or about April 6, 1987, the respondent was directed to pay arrears of $700 and $250 in counsel fees.

3. In or about February 1988, an application was brought seeking, *inter alia,* to punish the respondent for contempt for failing to comply with the order of August 11, 1986.

4. On or about May 3, 1988, the issue of whether the respondent's conduct was a willful failure to comply with a court order was referred to a Special Referee.

5. On or about April 5, 1989, the Special Referee issued his report. The Special Referee found, in part, that the respondent was a malingerer, that he willfully was not working, and that he should be found in contempt.

6. On or about June 19, 1989, the court concluded that the respondent had willfully disregarded the order of the court and that the respondent's willful noncompliance was designed to, and did, defeat, impair, and prejudice the defendant's rights under the order. The respondent was adjudicated in contempt and fined $4,600. The respondent could purge the contempt by payment of the fine to the defendant.

7. In or about September 1989, another application was brought seeking, *inter alia,* to punish the respondent for contempt for failing to comply with the order of August 11, 1986.

8. On or about October 13, 1989, the court found, in part, that the respondent was deliberately attempting to minimize a potential child support award until after the financial aspects of the underlying divorce action were resolved. The respondent was adjudicated in contempt and fined $7,800. The respondent could purge the contempt by submitting a schedule for payment of the fine.

9. On or about May 15, 1990, after a trial in the divorce action, the court found that the respondent had continually defied the orders of the court by refusing to pay his share of child support. The court restated its findings that the respondent was deliberately attempting to minimize a potential child support award. The court ordered child support in the sum of $8,500 per year or $163 per week. The court also found that the respondent was in arrears and that he had presented no evidence to justify his willful failure to pay court-ordered support. (The court's May 15, 1990 decision was reduced to an order and judgment dated August 15, 1990.)

10. On or about January 16, 1991, the court granted a motion to resettle and/or to modify its judgment of October 13, 1989. The court found that the respondent's conduct was calculated to, and actually did, defeat, impede, impair, and prejudice the defendant's right and remedies and that the respondent's conduct was willful. The court noted that the respondent had engaged in continuing contempt of the orders of the court. The October 13, 1989 order of contempt and the $7,800 fine were reaffirmed. The respondent could purge the contempt by paying the fine in full by February 15, 1991.

11. On or about February 6, 1991, the motion to have the respondent adjudged in contempt was granted; the respondent was adjudged guilty of contempt for willfully disobeying the order of August 11, 1986, and his conduct was found to be calculated to, and actually did, defeat, impede, impair, and prejudice the rights and remedies of the defendant. An order of commitment and warrant of arrest was issued due to the respondent's failure and neglect to purge himself of the contempt and his failure to pay the fine imposed by the orders of October 13, 1989 and January 16, 1991.

Charge Two alleged that the respondent disregarded the rulings of a tribunal made in the course of a proceeding in violation of Code of Professional Responsibility DR 7-106 (A) (22 NYCRR 1200.37 [a]):

1. The factual allegations of Charge One are repeated and realleged as if fully set forth herein.

2. In or about August 1991, an application was brought seeking, *inter alia,* to punish the respondent for contempt for his failure to comply with the orders of August 11, 1986 and August 15, 1990.

3. On or about November 13, 1991, the motion to hold the respondent in contempt was held in abeyance, subject to reinstatement, pending further order of the court and the respondent's compliance with certain provisions including, but not limited to, the payment of weekly child support, the payment of arrears in installments, and the payment of counsel fees in the amount of $2,500.

4. In or about October 1993, an application was brought seeking, *inter alia,* to reinstate the application of August 1991 and to hold the respondent in contempt for his continuing failure to comply with the order of August 15, 1990.

5. On or about March 15, 1994, the court held the respondent in contempt for his failure to pay child support and found that there were no factual issues to be resolved.

6. On or about June 29, 1994, the court granted the motion and adjudged the respondent guilty of contempt for willfully disobeying the orders of August 15, 1990 and November 13, 1991. The court found that the respondent's conduct was calculated to, and actually did, defeat, impede, impair, and prejudice the rights and remedies of the defendant. The respondent was ordered to pay support arrears and counsel fees. A commitment order was also issued.

Charge Three alleged that, based on the factual allegations in Charges One and Two, the respondent engaged in conduct that is prejudicial to the administration of justice and that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (5) and (8) (22 NYCRR 1200.3 [a] [5], [8]).

Charge Four alleged that the respondent filed suit or took other action when he knew or when it was obvious that such action would serve merely to harass or maliciously injure another and that the respondent knowingly advanced a claim that was unwarranted under existing law, in violation of Code of Professional Responsibility DR 7-102 (A) (1) and (2) (22 NYCRR 1200.33 [a] [1], [2]):

1. On or about February 9, 1988, the respondent caused Margarita Rosa to be served with a summons and complaint in an action for defamation in Rockland County Supreme Court.

2. The action was based on an affidavit filed by Ms. Rosa on December 12, 1986, in support of a motion regarding Christmas vacation with their daughter.

3. The respondent alleged that publication to the Honorable Walter Schackman, his law secretary, and Harriet Cohen, Esq., Ms. Rosa's attorney, constituted defamation.

4. The respondent knew or should have known that statements made in the course of judicial proceedings are privileged and that such an action would serve merely to harass or maliciously injure Ms. Rosa.

Charge Five alleged that the respondent disregarded the rulings of a tribunal made in the course of a proceeding in violation of Code of Professional Responsibility DR 7-106 (A) (22 NYCRR 1200.37 [a]):

1. On or about February 19, 1993, in the matter of *Donna Goldstein v Daniel Judd Shapiro,* a divorce action in Supreme Court, Rockland County, the respondent was ordered to pay $100 per week in pendente lite child support retroactive to the week of September 19, 1992, arrears of an additional $50 per week, and one half of the child's unreimbursed health expenses.

2. On or about June 19, 1993, a petition was brought in the Family Court, Rockland County, to enforce the order of the Supreme Court dated February 19, 1993.

3. On or about November 3, 1993, a stipulation was entered into in the Family Court. This stipulation was included in the decision and findings of the Hearing Examiner dated December 12, 1993. It was ordered, *inter alia,* that the respondent was to comply fully with the order of February 19, 1993, to pay counsel fees, and to make installment payments of arrears. The issue of willfulness was deferred to a future hearing or, upon payment of the arrears as set forth in the order, deemed withdrawn.

4. The respondent failed to make payments in conformity with the order of December 12, 1993. On or about September 30, 1994, a hearing was held in Family Court.

5. On November 21, 1994, the Hearing Examiner found that the respondent had willfully failed to pay support; the orders of November 3, 1993 and February 19, 1993 were continued; arrears were established, and the respondent was ordered to pay legal fees. The matter was referred to a Family Court Judge for confirmation of the finding of willfulness.

6. On or about January 23, 1995, the respondent was scheduled to appear in Family Court with respect to confirma-

tion of the finding of willfulness. Instead, the respondent submitted an affirmation in which he stated that he was unable to appear due to the fact that there was an outstanding commitment order in a proceeding with his former wife. Upon information and belief, the respondent was referring to the commitment order issued by the Supreme Court, New York County, in the matter of *Daniel J. Shapiro v Margarita Rosa.*

7. A hearing was held and, among the actions taken by the court, a warrant was issued for the respondent's arrest.

8. On or about June 7, 1995, the respondent was arrested and appeared in Family Court. The finding of the Hearing Examiner that the respondent's failure to pay child support was willful was confirmed. The respondent was committed to the Rockland County Jail for a period of six months with sentence to be suspended upon his payment of all arrears.

Charge Six alleged that the respondent disregarded the rulings of a tribunal made in the course of a proceeding in violation of Code of Professional Responsibility DR 7-106 (A) (22 NYCRR 1200.37 [a]):

1. The factual allegations of subparagraph one of Charge Five are repeated and realleged as if fully set forth herein.

2. On or about May 22, 1993, interrogatories were served on the respondent in the divorce action.

3. On or about November 2, 1994, the court denied the respondent's application for preclusion and directed that he "comply" with the interrogatories within 20 days.

4. On or about August 5, 1994, the court ordered updated forensic evaluations of the parties.

5. On or about October 6, 1994, the Appellate Division, Second Department, denied the respondent's motion to enjoin the Rockland County Department of Mental Health from conducting forensic evaluations of the parties and to require that any such evaluation be electronically recorded.

6. On or about December 14, 1994, an application was brought, *inter alia,* to punish the respondent for contempt for failing to pay child support, to preclude the respondent from introducing any evidence related to the information sought by the interrogatories, to strike the respondent's pleadings, and for arrears.

7. On or about March 29, 1995, the court ordered that a hearing be held on May 5, 1995.

8. On or about May 5, 1995, the respondent failed to appear. The court ordered that a warrant be issued for the respondent's

arrest and that the respondent be remanded to the County Jail until all arrears were paid.

9. On or about May 8, 1995, a warrant was issued for the respondent's arrest.

10. On or about June 7, 1995, the respondent was arrested, and after appearing in the Rockland County Family Court, he was held in custody at the Rockland County Jail.

11. On or about June 14, 1995, the court ordered that the respondent be released, having purged himself of contempt.

Charge Seven alleged that, based on the factual allegations in Charges Five and Six, the respondent engaged in conduct that is prejudicial to the administration of justice and that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (5) and (8) (22 NYCRR 1200.3 [a] [5], [8]).

Charge Eight alleged that the respondent filed a suit or took other action when he knew or when it was obvious that such action would serve merely to harass or maliciously injure another and that the respondent knowingly advanced a claim that was unwarranted under existing law, in violation of Code of Professional Responsibility DR 7-102 (A) (1) and (2) (22 NYCRR 1200.33 [a] [1], [2]):

1. On or about June 1, 1995, the respondent filed an action in the United States District Court for the Southern District of New York alleging various violations of his constitutional rights against Attorney-General Dennis Vacco, the Honorable William Warren, the Honorable Robert Meehan, the Honorable Walter Schackman, the Judiciary of the State of New York, Margarita Rosa, and Donna Goldstein.

2. The respondent alleged due process violations by the State court Judges in *Daniel J. Shapiro v Margarita Rosa* and *Donna Goldstein v Daniel Judd Shapiro* and demanded $10,000 damages from each defendant.

3. After Ms. Rosa and Ms. Goldstein moved to dismiss the action against each of them, the respondent discontinued the action against them.

4. The respondent knew or should have known that there was no basis for bringing the action and that such an action would serve merely to harass or maliciously injure.

Charge Nine alleged that the respondent engaged in conduct that is prejudicial to the administration of justice and that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (5) and (8) (22

NYCRR 1200.3 [a] [5], [8]), by failing to cooperate with an investigation of the Grievance Committee:

1. On or about February 21, 1995, a letter was sent by the petitioner to the respondent advising him that a *sua sponte* complaint (File No. 11566/95) had been authorized against him based on his alleged willful failure to comply with court orders and his willful failure to appear in court in two pending domestic relations matters in which he was a party. It was requested that, within 10 days of his receipt of the letter, the respondent submit a written answer addressing in detail the allegations outlined therein. The letter advised the respondent that his unexcused failure to reply constitutes professional misconduct independent of the merits of the underlying complaint.

2. On or about March 2, 1995, the respondent requested an extension until March 20, 1995, to submit a written answer to the *sua sponte* complaint. He was directed to send a letter confirming the extension.

3. No confirmation letter was received from the respondent, nor was an answer submitted by March 20, 1995.

4. On March 24, 1995, Mitchell Friedman, Esq., attorney for the respondent, requested an extension until April 3, 1995, for the respondent to submit an answer. Mr. Friedman sent a confirmation letter dated March 24, 1995.

5. By a letter dated April 4, 1995, Mr. Friedman forwarded the respondent's purported answer to the *sua sponte* complaint. The respondent stated therein that, because litigation was pending, he was compelled to explain in general terms the surrounding circumstances. He anticipated submitting a supplemental response shortly.

6. By a letter dated May 2, 1995, addressed to Mr. Friedman, it was requested that the respondent submit a detailed answer to the *sua sponte* complaint by June 1, 1995.

7. By a letter dated May 31, 1995, Mr. Friedman supplied some information regarding the status of the underlying matters.

8. On March 4, 1996, a letter was sent to Mr. Friedman by certified mail, return receipt requested, advising him that the supplemental answer in File No. 11566/95 had not been received. It was directed that the respondent submit a detailed written answer within 10 days of his receipt of the letter. It was further requested that the respondent submit copies of his brief and Appendix in the appeal submitted to the Appellate

Division. The letter advised the respondent that no further adjournments or extensions would be considered.

9. The only correspondence received in response was a letter dated April 16, 1996, forwarding a copy of the decision of the Appellate Division, First Judicial Department, which affirmed the order of Justice Schackman entered August 25, 1994, adjudging the respondent in contempt and directing a hearing on counsel fees.

10. The respondent failed to submit a detailed written answer to the *sua sponte* complaint and failed to submit the additional materials requested in the letter of March 4, 1996.

Charge Ten alleged that the respondent engaged in conduct that is prejudicial to the administration of justice and that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (5) and (8) (22 NYCRR 1200.3 [a] [5], [8]), by failing to cooperate with an investigation of the Grievance Committee:

1. On or about June 23, 1995, a letter was sent to Mitchell Friedman, Esq., the respondent's attorney, with a letter addressed to the respondent advising him that a *sua sponte* complaint (File No. 11834/95) had been authorized against the respondent based on his willful failure to comply with court orders and his willful failure to appear in Rockland County Supreme Court. The letter to the respondent requested that he submit, within 10 days of his receipt of the letter, a written answer addressing in detail the allegations outlined therein. The letter advised the respondent that his unexcused failure to reply constitutes professional misconduct independent of the merits of the underlying complaint.

2. The respondent failed to submit an answer to the *sua sponte* complaint.

3. On or about March 4, 1996, a letter was sent to Mr. Friedman by certified mail, return receipt requested, advising him that an answer had not been received in File No. 11834/95. It was directed that the respondent submit a detailed written answer to the complaint within 10 days of his receipt of the letter. It was further requested that the respondent submit copies of his brief and Appendix in the appeal submitted to the Appellate Division. The letter advised the respondent that no further adjournments or extensions would be considered.

4. The respondent failed to submit a detailed written answer to the *sua sponte* complaint and failed to submit the additional materials requested in the letter of March 4, 1996.

In view of the documentary evidence presented by the Grievance Committee, which the respondent failed to sufficiently rebut, the Special Referee properly sustained all of the charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted, and the respondent's cross motion to disaffirm the report and to dismiss the charges is denied.

In determining the appropriate measure of discipline to impose the respondent asks the Court to consider the character evidence that was presented at the hearing; his pro bono legal services to children, young adults, and immigrants; that all of the charges against him arise out of his personal matrimonial litigation; and that none of the charges involves fraud, deceit, dishonesty, misrepresentation, moral turpitude, or prejudice to a client's interests or rights. The respondent argues that, under the circumstances, a censure is an appropriate sanction. Alternatively, the respondent argues that a period of suspension no longer than the period of his current interim suspension is appropriate.

The respondent's prior disciplinary history consists of four letters of admonition dated December 8, 1989; February 8, 1993; October 4, 1994; and November 22, 1995, respectively.

In view of the number of charges of professional misconduct against the respondent that are sustained by the credible evidence and the respondent's prior disciplinary history, the respondent is suspended from the practice of law for a period of five years.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and O'BRIEN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent's cross motion to disaffirm the report of the Special Referee and to dismiss the charges is denied; and it is further,

Ordered that the respondent, Daniel Judd Shapiro, is suspended from the practice of law for a period of five years, commencing December 15, 1997, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the five-year period upon furnishing satisfactory proof that (a) during that period he refrained from practicing or attempting to practice law, (b) he has fully complied with this order and with the terms and provisions of the written

rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), and (c) he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Daniel Judd Shapiro, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.